on behalf of the appellant, and I would like to reserve two minutes for rebuttal, please. All right. If you can help watch the clock, I will try to look as well. Yes, Your Honor. I wanted to jump in into the focus order that the Court has issued. I've read the case. While I can think of at least two issues where the case could conceivably apply, none of those would be in an obvious way, so perhaps the Court could give me some context and I would be happy to try to apply the Cruz-Gramajo case to whatever questions the Court may have. Well, I think the question is you cite cases that might go the other way, and so the question is, is this the correct way to look at it in terms of it will all end up in the same place? I mean, that's really the fundamental question. Are we talking about the first issue in the opening brief in terms of whether or not the wire fraud, as the identity theft has to occur temporarily during the wire fraud? No, we're talking about the criminal history issue. Oh, the criminal history issue. Okay. That was my second possibility. All right. Well, that seems pretty on point because the question is in the Cruz case, it was sort of a no harm, no foul situation because you had the same criminal history category in the end. I know you think that there is a possibility the judge might have even gone lower, but I'm trying to find some authority for that. I will confess that my research following the Court's order has not turned up a case on point on this issue. All right. The judge had made an argument that it should be two and it should be lowered down to one. I think the Court was incorrect in counting that extra point and bumping it up to category three. It should have been two. And then I don't think Judge Chen said anything on the record that would allow the Court to say, well, there is no way he would lower it down to one. I think it's possible. He may say yes, he may say no, but I don't think in the posture that we have where the judge said I am calculating it at three, but then I'm going down to two because I think it's overstated. I frankly think what the Court was doing was a variance. Even though the Court had used a language that sounds like a departure was in the guidelines, but I believe there is a case in the circuit that encourages judges to use departure-like language, even though they're really doing a variance. So I think on this record, it's only possible he was just doing a variance, and I think the starting point, in a sense, in calculations is the guidelines. So if the judge was incorrect in starting out at category three before even making that discretionary departure down to two, I think if the Court concludes that it's an error, it should go down for that reason as well and to give Judge Chen an opportunity to decide whether he would go down to one or not. It's a relief we asked for, and if the 98 DOI ages out, all he has is one DOI for which he completed probation. So there is, I would say, a reasonable argument that he could be treated as somebody who has criminal history category one, and I think Judge Chen should have an opportunity to consider that issue. Well, that's a different argument. Yeah, why could he be treated as category history one? Well, because if the Court was incorrect in assigning it category three. Right, that would make him a two. It would make him two, and all that two would be based on would be one DOI, and that's it, for which my client has completed probation. So I would argue that a person with one prior conviction for which he successfully completed probation, it wouldn't be sort of an error as a matter of law for the judge to conclude that he should be treated down as somebody who is at category one. Yeah, that's a pretty good stretch to argue that it wouldn't be error for the judge to give him a different category than what he clearly is qualified for. Well, I mean, I think what I'm trying to get at, perhaps unartfully, is that the judge went from three to two because he thought his history was overstated. I'm saying that he would have made the same conclusion if he was at two trying to get down to one. But the point is, do you agree that category two is the correct category?  In the absolute correct sense. Right. Two should be right. It should be two. It should be two. Right. I agree with that. And that's the way that the judge judged the sentence. So what's the problem? The problem is that he only got there by concluding that the history is overstated. Right. That, to me, seems like a variance down, not a guideline calculation. Well, there may have been a mistake there, but he got to the right category. So where's the error if you made the — if you gave your client the sentence based on the correct category, even if he sort of got there for the wrong reason? Well, I think he should have been at one. We argue that he should be at one based on the points that he should have been at one. Right. But he's not legally — but you've admitted that he's not legally obligated to go to category one. Right. He's not legally — So that's only a hope and a prayer that, if it goes back, the judge would say, well, let's go even further. That's really your argument.  Right. That is exactly what I'm arguing. Okay. Well, I wouldn't use the words hope and prayer, but — Something even stronger, maybe. You'd rely on the district judge's good judgment. Right. That's probably the phrase that I would use. But I understand what the court is trying to say. And that is really my argument, that there is a non-speculative chance that Judge Shen would have varied down further to category one based on the fact that my client only has one DUI for which he completed probation. And that's my argument there. Can I answer any other questions regarding that particular issue? No. Why don't you proceed, then, with whatever other issue you want to address? Right. I wanted to talk about the amount of loss issue, which really has two components. One is sort of a smaller issue regarding the monarist loss. And sort of the bigger issue is, I would say, the more tricky issue of whether or not there should have been offset for the $1.8 million that was found in the M&T account. Now, those two arguments work in tandem in the sense that the only way that the guideline calculation would change is if the court agrees with us on both issues. I want to make that clear. Number two, on the monarist, on the smaller loss, there's obviously my predecessor's objection was late. I will acknowledge it in the briefing. And all I'm arguing is this should not be a waiver. Number one, because counsel did object. I know he was late. He admitted that he was late. Let's assume that it wasn't waiver, that it's forfeiture, and, therefore, the plain error rule. So tell us why it would be plain error to count it. Because if we look at the offer of proof that the prosecutor made at the last sentencing hearing, he said that there's evidence that a swiper was found in my client's house, and the prosecutor also alluded in sort of a general way to the LR1 victim impact statement, which is a different loss. And all the swiper or even some of the trial documents that the government has cited, all that establishes is there is a business relationship between my client and monarist. What there is, I believe, no evidence of, and even if we assume that the offer of proof is true, is that monarist was a victim of the same type of fraud that, let's say, LR1 claimed they were a victim of. LR1, first of all, there was no trial testimony like we had, for example, with the Chase payment account. Clearly establishes what the claim is, both in terms of what the fraud is and what the loss is. With LR1, we didn't have trial testimony, but we had a victim impact statement. We have no issue with that. With monarist, we have nothing. You know, there are three checks that the government cited that my client wrote to monarist. There is a credit card statement for about $50,000 worth of charges, and it references some chargebacks in an unspecified manner. But what I'm saying is there is no evidence that there was fraud like with the other two. And in order for monarist to be a victim entitled to recover, there has to be, or even to calculate this for the purpose of sentencing guideline, there has to be some showing that they were a victim of the same type of fraud that my client was convicted of in this case. And I don't see any evidence of that here. But that's so even if under whatever standard the court chooses to apply here, even if it's plain error, I don't think it passes muster because there is just nothing to show that there was a loss of a similar type. So, you know, there is also no evidence substantiating the amount, but I think that's more of a secondary issue. I think a more fundamental problem here is that there is no evidence that they were a victim of the same type of fraud that my client was convicted of. A separate question. As to count 21, the identity fraud count, what practical difference would it make if we were to reverse the conviction on count 21? Probably not, frankly, because I think there is a second count of identity theft fraud that it's not an issue in the appeal, and I believe the statute requires that at least one of them have to be exposed consecutively. The only context in which I can think it might make a difference is under 3553, if the judge is looking at how many counts he was convicted of. So that might, you know, as a discretionary factor, it might make a difference if he stands convicted of one count, not two. Okay. And the assumption that it makes enough difference that I should pay some attention to it. Can you give me the argument? Judge Tent considered this question, and among other things, he says, well, the use of the identity from the driver's license was really continuous throughout because it formed the premise for the identification and then the continuation. So how do you respond to that? Judge Tent said several things, but that's the last thing he said. How do you respond to that? First of all, I could find no support for the propositions that identity theft is a continuing offense. I guess that's one response. Number two is I believe the statute requires the identity theft to be contemporaneous with temporarily with the mail fraud. I'm sorry, the wire fraud. Well, I understand the during, but then that goes back to the question as to whether or not the identity theft is continuing and extends to the time of the mail fraud. I don't think the evidence would support a rational finding that it was continuous because the theory that was presented at trial, I think the only evidence that exists here, is that the identity was used to open up the virtual office in Delaware back in 2008. That's the JMA? Right, right. The government has argued that, well, you know, the idea was continuing to be used when he applied for Chase Payment Tech Swiper to obtain an account with them. And my response to that would be there is no evidence that it made any difference for them, whether he had a virtual office or not, because if you look at the application, he lists his name, telephone number, and contact address in San Francisco. So he's not trying to hide himself. But is there another variation on the theme that we wouldn't call continuous identity, but where the identity is, in fact, invoked at the time of a transaction? I mean, it might have just been in the file, but you need, in effect, absent that identity, you couldn't invoke it and have a transaction. And that's kind of what happened here. So I'm wondering if that actually is contemporaneous, because absent that information in the file, you wouldn't be able to proceed with the transaction. Well, I don't think there is any testimony from the Chase Payment Tech people that this made any difference to them at all as to whether or not the virtual office is there or not or what kind of business he is. The actual act of fraud was using his then-girlfriend, now then-later wife, now ex-wife's driver's license to set up the JMA account. Correct. Was there any evidence that the driver's license had to be reissued? I mean, had to be — that some copy of it had to be provided or maintained in order to keep the JMA account open? To be honest with you, I reread the record in response to the government's argument. I couldn't find it. So as far as I can read the record, once the account was set up, I can see no connection between — I think there is evidence that the application is kept on file, however, correct? Right. I think they said that they keep it in order to have contact information if somebody didn't pay their bill. Doesn't pay their bill. Right. But it's sort of a one-time, you give us the license, we make a photocopy and stick it in the file. Right. I don't think there was any evidence that they had to redo it on a continuous basis. Renew it or provide another copy or an updated driver's license. As far as I could read the record, no. So your view is that just sitting in the file is not enough because it doesn't make it contemporaneous? Right. And I go back to what I said. I don't think identity theft is a continuous offense. It's more of a per-act type of a deal where you would — you know, you used it to pay in services X or you did it to take out money Y. So it's not charged a continuous course of conduct. It's charged on a per-incidence basis. All right. Thank you. Thank you. Good afternoon. May it please the Court, my name is Mary Jean Chan and I represent the United States in this appeal. This Court should affirm the conviction at issue as well as the sentence. First of all, there was sufficient evidence to uphold Count 21. 1028A simply requires that the identity theft be during and in relation to a felony. When that felony is wire fraud, part of what wire fraud is and what constitutes the felony is the scheme to defraud. And so here there's no question that the possession or the use of Lisa Bergoglio's California driver's license in 2008 occurred during the scheme to defraud, which was charged — That was Judge Chan's first argument. Right. But you don't have the actual fraud until you get the wire transmission, which is much later. So why is this during the crime, which is scheme to defraud, which requires the act of transmission, at that much earlier date? How do you get there? Yes. Well, part of wire fraud — I mean, there is the wire transmission. That's one aspect of it. And that completes the felony. But without the scheme to defraud, which that wire transmission is in furtherance of, you don't have wire fraud. Right. And so where are you — where are you tying — what are you tying the scheme to defraud to, when he sets up JMA? When he sets — actually, the charged scheme to defraud began even before that. Is there any evidence that at the time he set up JMA, he had this scheme in mind? Yes. And the evidence is the way he ended up using this completely fraudulent entity. But that — whoa, that just feels — that just feels completely circular. Well, it is evident. Is there — is there any hard evidence that at the time he set up JMA, he knew that at some point in the future, perhaps several years, which is what it turned out to be, that he would engage in a wire fraud, and that's why he needed the JMA? Yes. Well, the evidence is that he didn't use any actual — he didn't use his own name in setting up JMA. Yes. That's the — that's why it's identity fraud. Right. But that's part of it, which is that it was part — it was the foundation for this scheme. And this was the charged scheme to defraud. It's a — it's certainly — if this were just in relation to — you wouldn't — we wouldn't be having this discussion. The question is whether it occurred during the wire fraud. And you've — you've got to — what you've done now is to say, well, the JMA was integral, and therefore it's part of the scheme to defraud, and therefore it occurred during. And that's just — that's an utterly circular argument. Or a backwards argument. I mean, you're going sort of back in time to sweep it in. Well, no. I think I disagree. Or maybe upside down. I think that — That's not an in-relation, too. That's an in-relation back. No. Well, I disagree, Your Honors, because I think that this is about during. And during is a temporal link. So the question is, if the scheme to defraud, if the wire fraud is defined as beginning when the scheme to defraud as charged, which is in 2007, going through 2014, if the use of Lisa Bergoglio's California driver's license in 2008 occurred during that period of time, then it was clearly during that scheme to defraud. So tell me what happened in 2007. In 2007, Mr. Murray started the GoDaddy domain for the JMA and for — to begin with this. So during the scheme, we have — we have the entire scheme to defraud. The question is whether — But what did — what wire fraud actions occurred in 2007? In 2007, it was the scheme to defraud that began. So the question is — Tell me what it did with respect to a wire fraud in 2007. Something very specific. Or any other felony. I believe the question is if the wire fraud is complete just based upon the transmission or if it also requires a scheme to defraud. An element of wire fraud is the scheme to defraud. So you don't have a wire fraud unless you also have the scheme to defraud. You simply have a wire transmission. And so to really narrowly define wire fraud just to the wire transmission, I think is contrary to the law on wire fraud, which requires you as an essential element. Sure. But the wire transmission might be the culmination of a number of actions. Correct. What actions did he take in 2007, separate from JMA, started that wire fraud? He started the scheme by registering the domain with GoDaddy.com. That's JMA. Right. Yeah, no. You didn't listen to my hypothetical. Sorry. Apart from JMA — Yes. What did Mr. Murray do in 2007 to begin the wire fraud? I believe it is just JMA, so nothing else. It is just JMA. Right. All you have is this circular argument. I don't believe that it is circular. I think it is good evidence of what this scheme to defraud was. So I do — I believe that it is part of it. And I think the question here is if we're talking about wire fraud, does wire fraud as defined for purposes of 1028A, is that limited to the few seconds on January 27th, 2011, or February 1st, for which the wire transmission is made? Or does that include the scheme to defraud? I'm confident, Counselor, that you could tell me things that he did before that wire transmission that integrally related to the wire fraud that would be quite independent of JMA. Well, a lot of it is based upon JMA. That was the foundation. That was the pyramid of this because that was the sheen of legitimacy. So, for example, Paymentech, the terminal that was applied, and this goes to sort of the secondary argument that Judge Chen actually made his Rule 29 denial based upon, was that if you look at the application for Paymentech to get the terminal for which the credit card was fraudulently swiped, that uses the address that was allocated by virtual office Brandy One Executive Center to JMA. JMA is a fraudulent accounting firm. The entire premise of getting the Paymentech terminal was the idea that JMA was a legitimate accounting business that would require a terminal in order to process payments. So the wire fraud, counts one through four, are premised upon this lie, which is that in order to get the virtual office, they had to have an account, and they had to use it. They had to — what Murray did was used Lisa Bergoglio's California driver's license unlawfully in order to do this. The virtual office was maintained only — and this is a — this is sustained by Charles Boyce's testimony at transcript page 64 through 68. He explained that Brandywine required a government photo ID to help us track down clients that don't pay their bill. This is not a one-time thing. It's not just when you start and open up the virtual office, then you need the ID. You need it throughout the period of time. In fact, it actually doesn't make sense to not have this because people stop paying bills and they become delinquent throughout the maintenance of an account, not necessarily at the very beginning. So there is evidence, and it was evidence that was sufficient under the very lenient and deferential standard of sufficiency of evidence to sustain Judge Chen's finding that even under the narrow definition — Sotomayor, may I ask you, with respect to the jury instruction, was it anything more than the recitation and the statute on this segment? No. It wasn't anything more. And I think that's a very important point, too, Your Honor, which is that Murray didn't ask for another definition. He didn't ask for a definition of during that would limit it simply to the wire transmission as opposed to the scheme. And this was actually debated in closing argument. The government made an argument in closing argument that during meant the entirety of the scheme, which is part of wire fraud. It is an essential element. You cannot find wire fraud without finding a scheme to defraud. As charged here, it was spanned 2007 through 2014. What Murray argued was that, no, during isn't satisfied unless it's during the wire transmission, so how can you have something that was used in 2008 be during something that happened in 2011? So this was something that was argued in closing arguments, but Murray never asked, never asked for a jury instruction on this. And he's trying to sort of wedge it in into the Rule 29 sufficiency question. I suppose you could logically extend that argument to say if you open the account the week before, it might be in relation to, but it's not during because it's not on the same day that you made the wire transfer, right? Exactly, Your Honor. So they're asking for a very, very narrow definition of 1028A that would essentially require you to actually use the identity, let's say, through submitting the form in the wire. And I don't think that there's any suggestion that Congress intended such a narrow definition of 1028A. I wanted to actually ---- Let me make sure I understand the argument. Yes. As I understand your argument as I read the statute, the statute has as elements of the crime, number one, you have to devise or intend to devise a scheme or artifice to defraud. That's part of the crime. That's part of the crime. And then you transmit by wire. That's part of the crime. That's part of the crime as well. And when you get both, you have the completed crime. Correct. Yes. And your argument is, well, if it's part of the crime and that earlier part of the crime happens before or simultaneously with submitting the driver's license, that's during. That's the argument. That is our first argument. And I think actually Cruz-Gramajo, which is the case that is about criminal history that this Court directed us to, actually supports this because it found that 1326 is a continuing offense just like wire fraud is. It starts when you illegally reenter the country, but it doesn't conclude until you have been found to be in the United States. Just like wire fraud, it starts with the scheme to defraud. It doesn't necessarily conclude or complete until there's actually a wire transmission. And in that case, this Court found that even though the defendant had committed a crime prior to being found in the United States, since it was subsequent to his crime, that was considered to be during his offense of 1326. So similarly, this Court should find that in the context of wire fraud, that because the defendant used the identification subsequent to beginning the scheme to defraud, even though it was prior to the wire transmission, although we think that there's evidence that it was during the wire transmission as well, that that would be during the wire fraud in satisfaction of 1028A. So we think that there are two bases for this Court to affirm the district court's finding on sufficiency. If I can move on to loss, the loss enhancement under 2B1.1 was appropriate. We didn't – my opponent didn't really talk about the 1.8 million offset. And we would submit that the 1.8 million should not have been offset, and it could not have been offset under Application Note 3E of the Guidelines section to 2B1.1, which says that you can only credit money that's been returned to the victim before the offense was detected. In this case, the victims lost that $1.8 million because Murray never returned that money to them. So from the perspective of the victims, they've lost it, and for calculation of loss, that should not be offset. Once that is not in play, then the Moneris solutions loss really is just even if it were a problem, it's harmless. And we would argue that it was not plain error by the district court to find this. First of all, the standard is preponderance of evidence. So the court merely had to find by a preponderance of the evidence that Moneris solutions loss should be included. Here we have that. We have something that was very close in time to the payment tech. We have a situation that was almost identical to the payment tech, which is that Murray applied under JMA, which is a completely fraudulent entity, to Moneris solutions for a credit card terminal, and then used this credit card terminal to make charges, and then also had chargebacks. So we have that, and we also, if you look at the supplemental excerpts of record that were submitted by the government at 779, for example, you have checks that show that Moneris was used in this way. So there is no problem, I believe, on that aspect. Going to the criminal history, which is the third argument that was addressed by my opponent, Cruz-Gramajo clearly says that an error that is harmless doesn't require a remand. And here I think it's important just to clarify that Mr. Murray had four points, criminal justice points. If you look at the PSR at paragraph 68, you see that he didn't have he had one point for each DUI. So that's two points. And then he had an additional two points for committing the instant offense while under a criminal justice sentence for one of the DUIs. So he had four points. Even if you discounted both of the DUIs, taking away both of his criminal history points, you would still have two points. That leaves you at criminal history category 2. So even if the district court completely discounted his entire criminal history except for in terms of the points and only looked at the fact that he had committed the instant crime while on sentence from the second most recent DUI conviction, which is not at issue here, you'd still have him in category 2. There's nothing in the record that suggests that Judge Chen went down to category 2 from category 3 for any other basis than the fact that DUIs are, while serious qualifying for category 3. Counsel, with respect to the count 21, I understood counsel and maybe I misunderstood him to say that he wasn't sure that even if we vacated on count 21 that it would make any difference. It wouldn't make any difference except on the 3553A factor, which is that the district court could consider that. Okay. So I think that's right. There were a number of other issues that were raised by the defendant in his briefing. If the Court has any questions on those, I'm happy to address them. Otherwise, I ask this Court for an affirmance. Thank you. Thank you. Let's add a minute back. You used up all your time, but we'll give you some additional time. One minute for rebuttal. I have two points to make. One is to reiterate, number one, under Ninth Circuit law, wire fraud is not a continuing offense. The cases that we cite on this point are on page 34 of our opening brief. And also, in a related point, the gist of the wire fraud offense is the use of the wire. The case of United States v. Pace, which we cite on page 35, says that without the use of the wire, there is no crime. So I don't think counsel's argument works. It's not a continuing offense. But what about the argument that as the crime is defined, an essential part of the crime is before the actual transmission by wire, there has been devised or an attempt to devise a scheme to defraud? That's part of the crime. If you don't have the scheme to defraud, transmitting something by wire is not a crime. My response to Judge Fletcher would be that Congress knew that, and they deliberately chose to say during and in relation to. As you said before, if all that Congress wanted was to make sure that it's in relation to the underlying offense, then they would have used the temporal link. That's what Judge Ribey said, but I agree with him. I'm sorry. I apologize. I agree with what he said. All right. They could have just said in relation to. Because they included the temporal link, I think they must have meant something by it. Got it. And if I can make one brief point, in response to, I believe, Judge McKeon's concern about, well, agreeing with us on the interpretation of 1028A would mean that there is a very narrow window under which aggravated identity theft would apply. My response to that would be that there is an identity theft statute on the books, which does not require matching the underlying felony and identity theft. That crime is already on the books. I think Congress was trying to address a very specific issue. So it's quite possible that they wanted to address it in this very narrow way. And there is nothing in the law or in the legislative history that would lead to a contrary conclusion. So I don't think that should be a problem. Unless I have to quote any other questions. No. I think no further questions. Thank you. Thank you both for coming and for your argument. The case just argued of U.S. v. Murray is now submitted. We also are submitting Stevens v. Jiffy Lube and conclude for the afternoon. Thank you. Thank you.
judges: McKeown, W. Fletcher, Bybee